FILED at 4:00 P.M. October 17, 2008
Courtroom Deputy/Calendar Clerk
U.S. District Court
Middle District of Georgia

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

UNITED STATES OF AMERICA  :
:  DOCKET NO. 1:08-CR-38(WLS)
v.  :
:
ROBERT HERRING  :
_____ :

PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and ROBERT HERRING, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the Information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of

1

such a trial. The defendant understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)  The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges defendant with a violation of the International

Emergency Economics Powers Act, in violation of Title 50, United States Code, Section 1705 i/c/w the Iranian Transactions Regulations, 31 Code of Federal Regulations, Part 560.

(B) That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a maximum sentence of twenty (20) years imprisonment, a maximum fine of $~~50,000~~ $1,000,000, or both, and a term of supervised release of five (5) year(s). Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00. **However, the government and the Defendant agree that <u>should the United States file a Motion for Substantial Assistance, pursuant to Title 18, United States Code, § 3553 on Defendant's behalf,</u> then Defendant should be sentenced pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure and that the Court impose a sentence within Zone A of the Advisory Sentencing Guidelines. The government and the Defendant further stipulate that the Defendant should receive a probated sentence.**

(C) Except as otherwise provided in paragraph (3)(B), the defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.

(D) The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings

3

on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty unless the Court determines that it will not sentence the Defendant in accordance with paragraph (3)(B) in this section.

(E) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(F) The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the defendant's waiver includes any collateral attack on the District Court's sentence. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of the defendant's sentence, then the defendant shall have the right to cross-appeal from the sentence.

(G) The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(H)     Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present Information as well as any and all criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.

(I)     The United States of America and Defendant hereby agree that any breach of this agreement by the defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the indictment, would: (a) not relieve the defendant of defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the defendant in any subsequent judicial proceeding any and all statements made by the defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a

preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)   That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant.

(B)   That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court. If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence

6

within one year of the imposition of sentence. In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the defendant fail to cooperate truthfully and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(C)     Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(i), based on any information provided by the defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(D)     If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right

to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(6)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

On January 10, 2007, inspectors from the U.S. Customs and Border Protection (CBP) were screening outbound shipments at the DHL facility in Wilmington, Ohio, and selected a shipment of documents for exam. The package identified with DHL identification number of 8329056330 and mailed from Robert L. HERRING, d.b.a., HERCO CORPORATION, (a.k.a. GLOBE TEX), 2802 Wilcox Court, Albany, GA, and addressed to Majid SABBAGHI, Principal officer of SABBAGHI INDUSTRIAL, No 111 Golshan Tower, Golzar Street- Nobonind Pastaran, Tehran, Iran 1693938393 was examined.

The DHL package containing "documents," was found to contain (3) three separate packets of documents. The first packet contained an invoice for an Ensco Offshore drilling rig with a selling price of $80 million USD. The first page of the invoice contained a header with the following information:

**HERCO EQUIPMENT CORPORATION**
**The Machinery People**
**2802 Wilcox Court**
**Albany, Georgia 31721 USA**
Phone: 229-883-3209
Fax: 229-888-2385
Email: **Hercoeq@bellsouth.net**
Dated: December 20th 2006.

The second set of documents contained a proposal offer for a HP jack up drill rig with a selling price of $130 million USD. The proposal offer also contained a header with the following information

**HERCO EQUIPMENT CORPORATION**
**The Machinery People**
**2802 Wilcox Court**
**Albany, Georgia 31721 USA**
Phone: 229-883-3209
Fax: 229-888-2385
Email: **Hercoeq@bellsouth.net**

9

Dated: December 15th 2006.

The third set of documents contained a Mutual Non-disclosure /Fee agreement between R. L. Herring and Majid Sabbaghi for the 1992 Model 300 Ensco Offshore oil drilling rig. The agreement was not written on "HERCO" letterhead; however, it did contain an original signature from Robert. L. Herring, Dated November 2, 2006 and a typed signature line for Mr. Majid B. Sabagghi (Commissioned broker for the buyer).

The primary CBP Officer, Inspector Mary Fennell, queried the Treasury Enforcement Communication System (TECS) and other data queries on Robert L. HERRING and HERCO in Albany, GA., which produced numerous TECS records, including an open SAC Atlanta case. CBP Officer Fennell contacted SAC Atlanta Special Agent Wayne Jones because of her concern of the possibility of an Office of Foreign Assets Control (OFAC) violations pertaining to business transactions with Iran. Special Agent Jones requested CBP Officer Fennell make copies and take digital photographs of the documents and forward to SAC Atlanta.

CBP Officer Fennell made certified copies of the documents which were seized on CBPF 6051S #3198784 and placed in evidence bag #0783803. CBP Officer Fennell forwarded the copied documents to SAC Atlanta via DHL #19580829155. The shipment containing the original documents was allowed to be exported to its destination via JFK on January 10, 2007. On January 12, 2007, Immigration and Custom Enforcement - SAC Atlanta sent a request to the Exodus Command Center through the Exodus Accountability Referral System (EARS) to determine if Robert L. Herring, dba Herco, aka Globe Tex, 2802 Albany, had applied for and/or obtained a license from Office of Foreign Assets Control ("OFAC") in order to conduct business with and/or export to Iran. OFAC searched their database and determined that no license has

been issued for the above-mentioned individual or companies. On this same date SAC Atlanta requested a separate determination from OFAC to determine if Shabbaghi Industries, Tehran, Iran or Petro Harraran Damavand, Dubai, UAE, has been issued a license for export to Iran.

On January 17, 2007, OFAC responded that no license has been issued to either company. OFAC stated: There is no general authorization or exemption for exportation for a new Cantilever, Drill Platform; there is a specific license required for such export to Iran. We (OFAC) have searched our central files from August 1995 to present and found no application for license filed under the names R.L. Herring, HERCO Equipment Corporation, Majid B. Sabbaghi d/b/a Sabbaghi Industrial, or Petro Harraran Damavand. Consequently, no OFAC licenses have been issued to the named subject(s). To date, the named subjects possess no OFAC license to engage in any transaction involving Iran.

During the course of the investigation, ICE learned that beginning on or about June20, 2007 through October 2007, Defendant, acting as a broker on behalf of SABBAGHI, who is located in Tehran, IRAN, negotiated for the construction of two WH330 Offshore Jack Drilling Rigs that were intended to be built in Canada, with an unspecified contractor, for export to Iran. Specifically, on or about June 25, 2007, Defendant forwarded the cost of the WH330's and commission fee to Sabbaghi. Sabbaghi, then forwarded the information to a person known as Dr. Hamzavi, who is believed to be in Iran.

On or about June 26, 2007, Defendant informed Sabbaghi that payment for these items will have to be handled through the company in Dubai "because of the situation." This refers to the U.S. economic sanctions prohibiting trade with the Islamic Republic of IRAN. The investigation revealed that in previous emails between Defendant and Sabbaghi, Defendant stated that he cannot do business with Iran and that anything they negotiated had to be diverted

11

through a country permitted to receive offshore drilling rigs negotiated by an American broker which are destined for Iran. This process is commonly referred to as "transshipping."

On or about this same date, Defendant forwarded via email to Sabbaghi a document entitled "Part one specification of New WH-330 Offshore Drilling Rig."

On or about June 29, 2007, Defendant emailed specifications and information about the manufacturer of the WH330's to Dr. Hamzavi. The Canadian entity listed in the file attachment lists the manufacturer as "Ramsay Machine Works, Ltd.," located at 2066 Henry Avenue, Sidney, British Columbia, Canada, Tel: (250) 656-5314 and fax" (250) 656-5388, with a Point of Contact of Greg Ramsay, CEO/President. Defendant further provided information about a company, TECHNICAL EDUCATIONAL DEVELOPMENT, INC (TED), located in British Columbia, Canada, that is qualified to complete the construction of the equipment once it reaches it final destination.

On or about July 12, 2007, Dr. Hamzavi contacted Defendant to advise Defendant that he found a financier, a Mr. Adel Noori, of Al Taasees Trading Co., LLC, in Dubai, UAE, for the project. He also asked the Defendant either to email or fax a signed proforma, which lists all the details the sell including the sale price of $150,000,000. Note: A "proforma" is "earnest money," or a "down payment" to ensure that the contract will be fulfilled.

On or about July 13, 2007, Defendant sent an email to Dr. Hamzavi in which he stated that the email is to confirm that he will pay $10 million dollars commission to Dr. Hamzavi on each of the two WH330 drilling rigs to be sold based on the $150,000,000 selling price.

On or about July 25, 2007, the investigation revealed that Sabbaghi received a document entitled, "National Iranian Oil Company's (NIOC) official notice to acquire these two WH330's." This document came from the Contract Department of the Pars Oil and Gas

12

Company located in Tehran, Iran. This document, henceforth referred to as "Tender Offer," is the official declaration by the Iranian Government through its subsidiary, Pars Oil and Gas Company, (POGC,) a division of the NIOC, that it has authorized the purchase of two WH330's. This "Tender Offer" is a "stimulus" for all of the Iranian Government's brokers around the world, including those working in Iran, to submit contract offers. The "Tender Offer" for these items was to be valid until about October 25, 2007. Sabbaghi, with Defendant's knowledge, submitted the contract details of the WH330's negotiated with Defendant in response to the Tender Offer made by POGC.

(7)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 17th day of October, 2008.

MAXWELL WOOD
UNITED STATES ATTORNEY

BY: *Tracia M. King*
TRACIA M. KING
SPECIAL ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 421380

BY: *Jim Crane*
JIM CRANE
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 193-275

13

I, ROBERT HERRING, have read this agreement and had this agreement read to me by my attorney, PAGE PATE. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
ROBERT HERRING
DEFENDANT

I, PAGE PATE, attorney for defendant ROBERT HERRING, have explained the Information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

_____
PAGE PATE, ESQ.
ATTORNEY FOR DEFENDANT
GEORGIA BAR NO. _565899_

14